IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTT HAWKINS, | )<br>) |
| Petitioner, | )<br>) |
| | ) Case No. 16 C 6877 |
| v. | )<br>) |
| UNITED STATES OF AMERICA, | )<br>) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On October 12, 2016, pro se Petitioner Scott Hawkins filed his first amended motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. After the parties briefed the present § 2255 motion, Petitioner moved to supplement the record, which the Court granted on December 21, 2016. On April 24, 2017, Petitioner filed a Discovery Status Report and supplemented the record with his Illinois Freedom of Information Act ("FOIA") request and response. For the following reasons, the Court denies Petitioner's first amended § 2255 motion and declines to certify any issues for appeal. *See* 28 U.S.C. §§ 2253(c)(2), 2255. [12].

### BACKGROUND

On March 1, 2012, a grand jury returned an indictment charging Petitioner and his co-defendant, Lester Warfield, with one count of bank robbery in violation of 18 U.S.C. § 2113(a). After Warfield pleaded guilty, Petitioner proceeded to trial on November 18, 2013. On November 20, 2013, the jury returned a verdict of guilty on the bank robbery count. On May 14, 2014, the Court sentenced Petitioner to 100 months in prison.

Petitioner then filed a notice of appeal on May 22, 2014. On appeal, the Seventh Circuit explained the relevant facts as follows:

> On February 3, 2012, two men robbed a Chase Bank located on West Irving Park Road in Chicago's North Side. When Lester Warfield was arrested on the day of the robbery, he told the FBI that he had robbed the bank with Scott Hawkins. The following month, Hawkins and Warfield were indicted for the robbery in the Northern District of Illinois. Subsequently, on November 30, 2012, Warfield held a proffer session with the government. During that session, he recanted his initial statement to the FBI and, instead of Hawkins, now alleged that he had robbed the bank with James Brooks, also known as "Stank." (Earlier that year, Warfield also told a confidential informant in prison that a masked bank robber depicted on television was a "co-defendant" of Warfield's who went by the nickname "Stank.") Warfield eventually pleaded guilty to the bank robbery in October 2013; notwithstanding his prior statements, however, Warfield refused to identify the other robber during his plea colloquy.
>
> Prior to trial, Hawkins moved to admit Warfield's November 30 proffer statement regarding Brooks's supposed involvement in the robbery. Because Warfield intended to assert his Fifth Amendment privilege not to testify, Hawkins argued that the proffer statement was admissible under Federal Rule of Evidence 804(b)(3) as a statement against penal interest made by an unavailable witness. The district court denied Hawkins's motion and excluded Warfield's proffer statement on grounds that the statement was not supported by corroborating circumstances that clearly indicated its trustworthiness. *See* Fed.R.Evid. 804(b)(3)[(B)].

*United States v. Hawkins,* 803 F.3d 900, 901 (7th Cir. 2015). In short, the Seventh Circuit affirmed Petitioner's conviction concluding that the Court did not err in determining that Warfield's statement lacked sufficient corroborating circumstances to be admissible under Rule 804(b)(3)(B). *See id.* at 902-03. This timely § 2255 motion followed.

## LEGAL STANDARD

"Relief under [§ 2255] is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013). In other words, to obtain relief under § 2255, a petitioner must show that his "sentence was imposed in violation of the Constitution or laws of the United States, the court

2

lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Swanson v. United States,* 692 F.3d 708, 714 (7th Cir. 2012) (citation omitted). Accordingly, a § 2255 motion is not a substitute for a direct appeal nor is it a means by which a defendant may appeal the same claims a second time. *See Bousley v. United States,* 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (relief under § 2255 "will not be allowed to do service for an appeal"). If a § 2255 petitioner does not raise a claim on direct appeal, that claim is barred from the Court's collateral review unless the petitioner can demonstrate cause for the procedural default and actual prejudice from the failure to appeal, or that enforcing the procedural default would lead to a fundamental miscarriage of justice. *See Brown v. Brown,* 847 F.3d 502, 518 (7th Cir. 2017). Because Sixth Amendment claims of ineffective assistance of counsel often involve evidence outside of the trial record, such claims may be brought for the first time in a § 2255 motion. *See Massaro v. United States,* 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003).

**ANALYSIS**

**I.     Ineffective Assistance of Trial Counsel Claims**

Construing his pro se § 2255 motion and filings liberally, *see Beal v. Beller,* 847 F.3d 897, 902 (7th Cir. 2017), Petitioner argues that his trial counsel provided constitutionally ineffective assistance of counsel. To establish constitutionally ineffective assistance of trial counsel in violation of the Sixth Amendment, Petitioner must show that (1) his trial attorney's performance "fell below an objective standard of reasonableness," informed by "prevailing professional norms" and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "To reflect the wide range of competent legal strategies and to avoid the

pitfalls of review in hindsight, [the Court's] review of an attorney's performance is highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Groves v. United States,* 755 F.3d 588, 591 (7th Cir. 2014) (citation omitted); *see also Delatorre, v. United States,* 847 F.3d 837, 845 (7th Cir. 2017) (courts apply a "'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance.") (citation omitted). To establish prejudice, it is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding," instead Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Carter v. Butts,* 760 F.3d 631, 635 (7th Cir. 2014) (citation omitted). If Petitioner fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *See Strickland,* 466 U.S. at 697 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant").

### A. Failure to Impeach Trial Witness

The Court first addresses Petitioner's argument that his trial counsel was constitutionally ineffective for failing to impeach Desmond Williams, who identified both Petitioner and Warfield from photo arrays on the day of the robbery and later testified at trial. Williams, who was working at the West Irving Park branch of Liberty Tax Services on February 3, 2012, saw two men walk into the Chase Bank on West Irving Park Road and then saw them running out minutes later. (12 CR 841-2, R. 130, Trial Tr., at 109-16.) At trial, Williams testified about the incident and the photo arrays in which he picked out both Petitioner and Warfield. (*Id.* at 116-19.) Also, the government asked Williams about his criminal history, including the fact that

4

Williams had been arrested of first degree murder in 1993, convicted of first degree murder in 1994, and served a prison term in IDOC until 2010. (*Id.* at 119-20.)

Relying on Williams' National Crime Information Center ("NCIC") report, Petitioner argues that his defense counsel failed to impeach Williams regarding Williams' February 2, 2012 arrest for murder. In response to the present § 2255 motion, the government provides the Court with Williams' Chicago Police Department Criminal History Report and Illinois Murderer and Violent Offender Report, which show that Williams was arrested for murder only once – in February 1993 – and that the NCIC reporting of the February 2, 2012 arrest was most likely in relation to Williams' criminal offender registration. (R. 22, Resp., Ex. B.) Because the jury was well aware of Williams' only murder arrest, conviction, and sentence, defense counsel's conduct was not constitutionally deficient as Petitioner argues. Moreover, defense counsel effectively cross-examined Williams in relation to the limitations of the photo arrays and certain distractions that may have impaired Williams' observation of the bank robbers. (Trial Tr., at 124-31.)

Under these circumstances and based on the presumption that defense counsel's representation was within the wide range of reasonable professional assistance, *see Delatorre,* 847 F.3d at 845, the Court denies Petitioner's ineffective assistance of counsel claim based on Williams' cross-examination and impeachment because Petitioner has failed to establish the *Strickland* performance prong.

### B. Failure to Investigate

Petitioner's remaining arguments in his § 2255 motion relate to his trial counsel's pre-trial investigations. It is well-established that "the Constitution requires an attorney to make a 'reasonable' investigation," which does not include investigating "every possible factual scenario." *Long v. United States*, 847 F.3d 916, 922 (7th Cir. 2017). Indeed, *Strickland* allows

5

counsel to make reasonable decisions whether certain investigations are necessary. *See Blackmon v. Williams,* 823 F.3d 1088, 1105 (7th Cir. 2016). As the Seventh Circuit teaches, "[r]esources are limited, and trial counsel must eventually shift from pretrial investigation to trial preparation." *Campbell v. Reardon*, 780 F.3d 752, 765 (7th Cir. 2015).

First, Petitioner argues that counsel erred by not investigating James Brooks' work attendance record for the day of robbery. The record reflects, however, that the FBI investigated Brooks by questioning him and his supervisor, including whether Brooks worked on February 3, 2012. (Ex. D, 1/23/13, FBI report, 12 CR 81 Bates 000241.) The government turned over this FBI report to Petitioner's counsel, but the report was inconclusive about whether Brooks worked the day of the robbery. Due to the inconclusive results of the FBI report, counsel's decision not to further investigate Brooks' whereabouts on the day of the bank robbery was reasonable because pursuing this investigation would most likely have been fruitless. *See Blackmon*, 823 F.3d at 1105; *Campbell*, 780 F.3d at 765.

Next, Petitioner contends that his trial counsel was constitutionally ineffective for failing to investigate the IDOC monitoring data associated with the ankle bracelet he was wearing because he was on parole and under electronic detention.[1] In particular, Petitioner argues that this monitoring data would have shown his whereabouts at the time of the February 3, 2012 robbery, namely, that he was not at the Chase Bank on West Irving Park Road at exactly 1:25 p.m. Similarly, Petitioner argues that his trial counsel erred by failing to obtain his telephone records from February 3, 2012 that would establish that he had communicated with his parole officer on the day of the robbery.

---

[1] Petitioner's FOIA request to IDOC and subsequent FOIA rejection pertained to the monitoring data in relation to his electronic monitoring device (ankle bracelet). (R. 28.)

Again, counsel's decision not to investigate the monitoring data and telephone records was reasonable under *Strickland*. To clarify, in his § 2255 motion, Petitioner admits he was with his co-defendant Warfield and had the cash on him from the bank robbery when Chicago Police Officer Adrian Perez arrested him. At trial, Officer Perez explained that after receiving a flash message about the bank robbery and suspect vehicle around 2:00 p.m. on February 3, 2012, he pursued Petitioner, who jumped out of the car and attempted to hide, after which Officer Perez arrested him. (R. 131, Trial Tr., at 159-62.) Officer Perez then recovered the United States currency from Petitioner. (*Id*. at 163-64.) Also at trial, one of the victim bank tellers testified that the robbery took place around 1:30 p.m. on February 3, 2012, and the government proffered the video of the robbery, which occurred at approximately 1:25 p.m. (R. 130, Trial Tr. at 30-34.). Also, as discussed above, Williams identified Petitioner as one of the men running out of the Chase Bank immediately after the bank robbery. That Petitioner was on the telephone with his parole officer at some point on February 3, 2012 does not call this evidence into question, therefore, counsel's decision not to investigate these telephone records was constitutionally reasonable.

Petitioner's argument about the ankle bracelet monitoring data fares no better. Under *Strickland*, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Vinyard v. United States,* 804 F.3d 1218, 1225 (7th Cir. 2015) (quoting *Strickland,* 466 U.S. at 690). Counsel's decision not to explore this implausible option was not in error, especially in light of the trial evidence discussed above. Indeed, as the Seventh Circuit explained on direct appeal:

> Multiple witnesses also implicated Hawkins and Warfield in the robbery[.] Hawkins was likewise found to be the "major contributor" of DNA taken from a hat that was likely worn by one of the robbers during the robbery. (The hat matched the appearance of the robber's hat on the bank's surveillance video and

7

was found outside a car that matched the description of the getaway car.) Further, when Hawkins was caught while fleeing from police shortly after the robbery, he was found to have $2,001 on his person; and one of the bank tellers had given exactly $2,000 to one of the robbers.

*Hawkins*, 803 F.3d at 902.

In sum, Petitioner has failed to establish that – under the circumstances – his trial counsel's strategic decisions fell below an objective standard of reasonableness. *See Strickland,* 466 U.S. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."). Further, because Petitioner has not established that counsel's performance was constitutionally deficient, the Court need not consider whether Petitioner was prejudiced by any such error. *See Groves*, 755 F.3d at 591 (If petitioner "is unable to make a sufficient showing of one of the *Strickland* prongs, we need not consider the other.").

The Court therefore denies Petitioner's § 2255 motion.[2]

## II  Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), a petitioner does not have the absolute right to appeal a district court's denial of his § 2255 motion, instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). A petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See id.* at 336; *Flores-Ramirez v. Foster,* 811 F.3d 861, 865 (7th Cir. 2016). Under this standard, Petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve

---

[2] Because the motion, files, and records of this case conclusively show that Petitioner is not entitled to any relief under § 2255, the Court need not hold an evidentiary hearing. *See Mitchell v. United States,* 846 F.3d 937, 941 (7th Cir. 2017); 28 U.S.C. § 2255(b).

encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)).

As discussed, Petitioner's ineffective assistance of trial counsel claims have no factual basis or are without merit, and thus Petitioner has not demonstrated that reasonable jurists would disagree as to the Court's conclusions regarding these claims. Accordingly, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

The Court denies Petitioner's motions to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**Dated:** May 9, 2017

**ENTERED**

*/s/ Amy J. St. Eve*

**AMY J. ST. EVE**
**United States District Court Judge**